LUCIUS B. BOOMER, impleaded with the Kankakee Bridge Company, Plaintiff in Error, *v.* ROBERT J. CUNNINGHAM *et al.*, Defendants in Error.

### ERROR TO WILL.

A bill cannot be sustained to enforce an agreement by a debtor, to pay one creditor in preference to others, where such creditor has no greater right than others, to such funds.

ROBERT J. CUNNINGHAM, John McIntosh, and Henry Wilson, administrators of Richard L. Wilson, deceased, filed their bill in chancery in the Circuit Court of Will county, against the Kankakee Bridge Company, Lucius B. Boomer, A. B. Stone and George A. Gray, John S. Smiley, Samuel Carr, John Leich, the collectors of the towns of Wilmington, Essex, Reed and Norton, Charles H. Weeks and David Perry, county treasurers of the counties of Will and Kankakee, setting forth that on or about the 13th day of June, 1856, Robert J. Cunningham, John McIntosh and Richard L. Wilson, then living, entered into and signed a contract in writing, with the Kankakee Bridge Company, then composed of H. Kerney, supervisor of the town of Essex, Richard Warner, supervisor of the town of Reed, and John J. Camp, supervisor of the town of Wilmington; which corporation was created by an act of the legislature of the State of Illinois, approved February 15, 1855, for the purpose of building a bridge across the Kankakee river at Wilmington. That by said contract, Cunningham, McIntosh and Richard L. Wilson undertook to clear the bed of the river, furnish the materials, and erect two piers and two abutments for a highway bridge across the Kankakee river, describing particularly the manner in which said abutments and piers were to be constructed.

The bridge was to be completed before November 1, 1856. The company reserved to itself the right to alter or change the specifications in regard to the size of the abutments and piers, etc. The company were to pay for mason work and materials delivered and laid up in said piers and abutments, upon monthly estimates, reserving therefrom twenty per cent. until the work should be completed.

The bill alleges, that the company employed one Mathewson as an engineer to locate the bridge, make plans of the same, and to make monthly estimates of the work as it progressed. That as soon as the piers and abutments were located, and the plans of the same were drawn and placed in the orators' hands, to wit, on or about the 20th day of July, 1856, Cunningham and McIntosh commenced the work, and proceeded with it as rapidly as possible until Dec. 1, 1856, when the same was completed, with some trifling exceptions; and that they obtained an estimate from Mathewson showing that the amount of work done was 1,246 $\frac{4.9}{100}$ yards, which, at $7.50 per yard, amounted to $9,348.67.

That the money to pay for the construction of said bridge was to be raised by a special tax upon the property in the towns of Wilmington, Reed and Essex, as provided by the act of February 15, 1855, being the only towns which voted in favor of said act. That two of said assessments had been collected, amounting to about $14,000 or $15,000. That the company had paid the orators about $5,000, leaving about $4,500 which was due and unpaid.

That before the completion of said piers and abutments, the company contracted with A. B. Stone and L. B. Boomer for furnishing the materials and putting up the superstructure of said bridge, which they had nearly, if not quite, completed; and that the funds used in paying said Stone & Boomer were a part of the assessments made upon the towns of Wilmington, Reed and Essex, and which the orators contended should have been applied first to the payment of the balance due them.

That the assessments upon the said towns of Wilmington, Reed and Essex for the year 1857, amounting to $7,600, had not been collected, but would be collected during the ensuing winter, and when collected would be subject to the order and direction of the company, of which Richard Warner was treasurer; and that the orators were informed and believed, and so charged the fact to be, that said company and the supervisors of said towns intended to apply the money to be collected in said towns to the payment of Stone & Boomer, and in the erection of a bridge connecting the east bank of the Kankakee river with the bridge then being erected by Stone & Boomer, upon the piers and abutments built by the orators. That said company had already commenced to build said bridge across the east branch of said river, and had expended a large amount of money on the same, being all the balance of the money collected for the years 1855 and 1856, and which the orators charged should have been applied in payment of the balance due them.

The bill charged, that it was provided in the contract, that Cunningham, McIntosh and Richard L. Wilson should be paid for the said work out of the taxes of the aforesaid towns first to be raised, and prior to all other claims.

That the whole amount of taxes to be raised in said towns for the three years provided for in said act of February, 1855, would not be sufficient to pay all the costs and expenses of building said bridges, into some $4,000 or $5,000, and that said company had no other means or authority or ability to procure the necessary means for that purpose.

The bill charges, that the company had drawn orders in favor of Stone & Boomer, and other persons to the orators unknown, upon the collectors of said several towns, for the whole, or a portion, of the tax for the year 1857, with the fraudulent intent of preventing the orators from instituting legal proceedings to recover the amount due them.

That the money to be collected on the assessment of the year 1857 should be first applied to the payment of the orators' claim; and that the amount that might be due Stone & Boomer, and the amount which might be due for building the bridge across the east branch of the Kankakee river, and every other claim upon the company, should be held secondary to the claim of the orators.

That said company had been, and were still, giving orders for the appropriation of the money so to be collected in said towns, as fast as the same was collected, in paying Stone & Boomer, and the expense of building the bridge across the east branch of said river, to the utter exclusion of the claim of the orators; and that the amount of said assessment, when collected, would not be sufficient to pay the orators the balance due them, and the amount that would be due Stone & Boomer, and the expense of the bridge across the east branch of the Kankakee river; and should the plan of paying the last mentioned claims first be carried out, the orators would be entirely remediless.

And praying for a writ of injunction restraining the said bridge company, its officers and agents, from paying out any money in their hands or under their control, of the proceeds of the tax theretofore or thereafter to be collected in said towns, for the building said bridge; and from issuing or giving any order to any person whatever, upon any collector of said towns, or upon the county treasurers of said counties, or upon any person charged with the collecting or keeping of any money belonging to said bridge company; restraining the several collectors of said towns from paying over any of said tax collected by them, to any person whatever, except the treasurers of said counties, and from accepting any orders drawn on account thereof; and

restraining the treasurers of said counties from paying out any moneys which they then had or which might thereafter come into their hands, as the proceeds of said tax, until the further order of the court; and that the orators might have a decree for the payment of the sum due them out of the moneys derived from said tax, and for further relief.

An injunction was issued, agreeably to the prayer of the bill.

A summons was issued, which was served upon all the defendants *except A. B. Stone and L. B. Boomer.*

The following decree was entered:

And now come the said complainants, by McRoberts and Goodspeed, their solicitors, and the said bridge company, by Royal S. Noble, one of said corporation, and on motion of said complainants and by and with the consent of said bridge company, it is ordered that a decree be entered herein in favor of said complainants, against the said defendants, for the sum of $2,165.22; and that the said defendants pay to the said complainants the said sum of $2,165.22 out of any money in their hands, or in the hands of the treasurers of Will and Kankakee counties, or in the hands of the collectors of the towns of Wilmington, Reed, Essex and Norton, now collected, or to be collected hereafter, for the purpose of erecting a bridge across the Kankakee river at Wilmington, as provided in the act of the legislature, approved the 15th day of February, 1855. It is further ordered, that the said sum of $2,165.22 be paid to the complainants by the said defendants, as soon as that amount of money shall come to their hands, and shall be paid before any other claim or demand against said bridge company. It is further ordered, that Royal S. Nobles, the treasurer of said bridge company, be authorized to draw an order or orders in favor of said Cunningham and McIntosh, or their attorneys, upon the treasurers of Will and Kankakee counties, and the collectors of the said towns of Wilmington, Reed, Essex and Norton, for the said sum of money, which shall be sufficient authority to said treasurers and collectors upon whom the same shall be drawn, to pay the amount of such order or orders. It is further ordered, that Alexander Anderson and Adam Comstock be allowed the sum of $10 each, for services rendered as arbitrators in this cause; and that the said injunction in this cause be dissolved as to all the defendants except as to said supervisors and said bridge company, and that said bridge company pay all the costs of this proceeding.

Lucius B. Boomer brings the case to this court by writ of error, and assigns the following errors:

1st. The court should have decreed that Stone and Boomer

were entitled to be paid the amount of their contract before any other payments were allowed from the fund in question.

2nd. That the decree is, that the defendants generally should pay, and that the bill sets up no claim against Stone and Boomer.

3rd. That the decree is, that the defendants generally shall pay, and upon its face sets forth that it is rendered upon the consent of the Kankakee Bridge Company, who were not, and do not claim to have been, authorized to speak for Stone and Boomer.

4th. That judgment should have been for the defendants instead of the complainants.

5th. The rendition of the decree, when it appeared upon the face of the bill that Henry Wilson was improperly joined as a complainant, and that the proper parties were not made defendants thereto.

6th. The rendition of the decree against Stone and Boomer and affecting their rights, when the court had no jurisdiction over them by service of process or by voluntary appearance.

7th. The making the order of reference when Stone and Boomer were not in default, and the cause not at issue; and because the order was without authority, and did not direct an account of the amount due Stone and Boomer.

8th. The rendition of the decree because it declares that complainants had a first lien upon the fund mentioned in the bill, and said claim first to be paid thereout, when it appeared by the bill that Stone and Boomer were entitled equally with complainants, and the decree should have directed complainants and Stone and Boomer to be paid *pro rata.*

BECKWITH, MERRICK & CASSIN, for Plaintiffs in Error.

McROBERTS & GOODSPEED, for Defendants in Error.

CATON, C. J. In this case, the decree must be reversed and the bill dismissed. The bill is for the specific performance of an agreement, to pay a certain fund to one creditor, instead of another, where the party claiming the fund has no inherent right to it above other creditors, except the promise of the debtor to pay him, in preference to the others. We know of no precedent for enforcing the specific performance of such an agreement. The party must seek his remedy, for a breach of the agreement, by an action at law. The act of the legislature, made the bridge company a body corporate and politic, capable of suing and being sued, of making contracts, and holding real and personal estate. There is no pretense, that there was not a perfect remedy at law,

for the violated contract. If they could be sued, a judgment might be obtained and satisfaction sought, by a sale of their property, the same as any other corporate body, so that the inadequacy of the fund raised and to be raised by the tax, to pay all the debts, did not necessarily show, that by other means the debts could not be paid. But if it were so, there was as much intrinsic merit in the claims of the other creditors, as of the complainants. They were made favorites, by the agreement of the company, and not by reason of any superior equity in their demand. If this were a trust fund, by operation of the law creating it, it was for the benefit of all the creditors equally, and it may be, that equity would interfere, to prevent them from diverting it from its legitimate object, if they threatened to do that, but it would only interfere for the benefit of all the *cestui que trust*, without showing any partiality to either. And in such a proceeding, all of the creditors should be made parties, unless they were so numerous or so situated, as to make an exception to the general rule.

The principles on which this case is decided, are so simple and so familiar, that we have preferred to determine it upon its merits at once, without regard to the question of service, and other subordinate questions, which were raised on the argument.

The decree is reversed and the bill dismissed.

*Decree reversed.*